The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Bost and upon the briefs and argument of counsel. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of plaintiff's alleged accident the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. That an Employer/Employee relationship existed between the Plaintiff and Defendant on September 15, 1993.
3. That the Defendant is self-insured and Alexis Inc. is the Administrator of funds on behalf of Defendants.
4. The parties stipulated to the following documents which they agree were authentic and genuine reproductions of business or medical records, maintained in the regular course of business and that said documents are received into evidence without further identification or verification:
a. Industrial Commission Form 22.
 b. Office Notes, Cape Fear Orthopaedic Clinic, June 29, 1993 to June 29, 1994.
c. Southeastern Rehabilitation Notes consisting of four pages.
d. MRI Report, Richard Roux, MD, October, 1993.
 e. ER Visit Notes, Cape Fear Valley Medical Center, September 15, 1993
 f. Southeastern Rehab Notes consisting of Discharge, Summary and 29 pages beginning October 26, 1993.
 g. Restricted Work Notes: 11/29/93, 10/20/93, 9/30/93, 11/08/93, 12/08/93, 9/23/93, 10/04/93.
h. Incident Report, September 15, 1993.
i. Job Description of Nursing Assistant.
j. Answers to Defendants Prehearing Interrogatories.
* * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission rejects the findings made by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. Plaintiff worked as a Nursing Assistant at the time of her injury on September 15, 1993 and had worked for defendant employer for approximately four years in that position, during which time her job duties as nursing assistant had not changed.
2. On September 15, 1993, Plaintiff sustained an injury to her left shoulder while helping a left side stroke patient get comfortably seated in a shower chair. This claim was denied and a Form 33 was filed by the claimant in which she requested a hearing on the issues of payment for temporary total disability, medical treatment and permanent partial disability.
3. As a nursing assistant part of plaintiff's job duties were transferring patients from one place to another and helping them get situated. The patient she was assisting was fidgeting "so much that she would have fallen out of the chair if she continued doing so." Plaintiff first got in front of the patient, and that did not work so she went around behind the patient and had to reach around to pull upward. When she did, the patient leaned up against her and pushed with her foot. When that happened, plaintiff felt her left shoulder pop and pain went immediately down her arm.
4. According to Ms. Judy Michaels, the nurse who Plaintiff was assisting in moving the patient, nothing unusual or out of the ordinary happened at the time plaintiff's shoulder was injured. The patient's movements were not unusual. Plaintiff herself admitted that all patients are not alike when she lifted them or moved them around; some patients squirm more than others; and a nursing assistant had to adapt to the different actions of the patients.
5. As the Patient Care Manager at Cape Fear Valley, Ms. Bobbie Thompson is responsible for supervising the rehabilitation unit. She described the Nursing Assistant job as requiring much walking, standing and lifting. She stressed that proper body mechanics are taught to the employees to prevent such injuries. In addition, she testified that all types of patients are encountered in the nursing assistant job. Some are more active than others and require more to move, but it is not unusual or out of the ordinary. Ms. Thompson further testified that the patient in this case was a left hemisphere stroke patient and that the movements by the patient that plaintiff testified to are typical of left hemisphere stroke victims.
6. On October 4, 1993 plaintiff was examined by Dr. Stanley Gilbert who had the impression she had a rotator cuff tear and ordered an MRI scan.
7. The MRI scan did not show a definite rotator cuff tear but did show tendinitis. Prior to the incident at work, Ms. Thompson had no history of left shoulder problems. At the time of the surgery, Ms. Thompson was noted to have a partial thickness rotator cuff tear.
8. Dr. Gilbert gave an opinion that the lifting injury of 15 September 1993 she described on her visit of October 4, 1993 was the cause of her problem and that an MRI is very good in showing a full thickness tear but is not so good on showing a more subtle tear. A radiologist may interpret this as tendinitis and it may be a true partial tear. The diagnosis must come from the arthroscopic surgery.
9. Plaintiff has not finished treatment and has not reached maximum improvement. Further medical treatment will be necessary for plaintiff's left shoulder to include physical therapy or further surgery. No percentage of disability can be assigned at this time.
10. Plaintiff had surgery on March 4, 1994. She was not able to return to work from the date of this surgery until April 14, 1994. She underwent physical therapy at Southeastern Rehabilitation and was discharged on May 10, 1994 with 30-50% diminished strength in her left shoulder.
11. Plaintiff's average weekly wage was $261.58 on September 15, 1993.
12. Plaintiff's absence from work was not caused by any injury by accident arising out of or during the course and scope of her employment.
* * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On September 15, 1993 the plaintiff sustained an injury on the job that was not an injury by accident because she was doing her usual job in her usual way and nothing unexpected happened. N.C.G.S. § 97-2 (6).
2. Plaintiff, not having carried her burden of proving injury by accident and resulting disability, is not entitled to compensation under the Workers' Compensation Act.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of Deputy Commissioner Bost and enters the following:
AWARD
1. Plaintiff's claim for compensation pursuant to the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Each side shall pay its own costs.
 S/ ______________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________ LAURA K. MAVRETIC COMMISSIONER